NOTICE
Decision filed 05/29/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230189-U

NO. 5-23-0189

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-1278 |
| | ) | |
| KEEFER L. JONES, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant's sentence is affirmed where he failed to establish that the trial court should have readmonished him of his right to counsel before allowing him to continue to proceed *pro se* during posttrial proceedings.

¶ 2    Following a jury trial, the defendant was found guilty of unlawful possession with intent to deliver 3 to 15 grams of a controlled substance (720 ILCS 570/401(c)(1) (West 2020)) and was sentenced to 25 years' imprisonment in the Illinois Department of Corrections. On appeal, the defendant argues that the trial court failed to comply with Illinois Supreme Court Rule 401 (eff. July 1, 1984) when it failed to readmonish him of his right to counsel before allowing him to continue to represent himself during posttrial proceedings. For the following reasons, we affirm the defendant's sentence.

1

¶ 3                                    I. BACKGROUND

¶ 4     On October 21, 2021, the defendant, Keefer L. Jones, was charged, by information, with unlawful possession with intent to deliver 1 to 15 grams of a controlled substance in violation of section 401(c)(1) of the Illinois Controlled Substances Act (*id.*). The trial court appointed counsel from the Champaign County Public Defender's Office to represent defendant. The information was later amended to unlawful possession with intent to deliver 3 to 15 grams of a controlled substance.

¶ 5     On February 7, 2022, during a pretrial hearing, the defendant and his appointed counsel indicated to the trial court that problems had arisen in the representation. The trial court continued the matter to another date and encouraged the defendant and defense counsel to work out their differences.

¶ 6     At a subsequent hearing on March 28, 2022, defense counsel and the defendant indicated to the trial court that they were unable to work out their differences. The defendant told the court, "I'll just defend myself. I'll get my discovery, and I'll defend myself." Thereafter, the trial court admonished the defendant as to the nature of the charges, the possible penalties, the implications of representing himself, and that he had the right to counsel, including the appointment of counsel if he was indigent. After the trial court ensured that the defendant understood the admonishments, the court granted the defendant's request to forgo representation by counsel and represent himself.

¶ 7     At a subsequent pretrial hearing on July 1, 2022, the defendant indicated that he intended to file a motion to suppress and would like a few more weeks to prepare and "in case I'm able to obtain an attorney." The trial court granted the defendant's request. However, the court did not grant the defendant's request for a continuance in order to prepare for the State's various pretrial motions that had been filed and set for this date in anticipation of the impending jury trial. It stated

it was "going to go forward with this motion hearing" as it had been scheduled for almost two months. The trial court then heard and granted the State's motions. The trial court also set a deadline of July 25, 2022, for the parties' submissions of prospective *voir dire* questions.

¶ 8    At the next hearing on July 25, 2022, in reply to the trial court's query as to why he had not yet submitted prospective questions for *voir dire*, the defendant told the trial court, "I told you I was considering hiring an attorney, and I was still searching." After some discussion among the trial court and the parties, the trial court set a jury trial in the case for October 24, 2022. The trial court told the defendant:

> "I've set two deadlines for you to file motions and submit proposed jury questions, neither of which you've met, because you've indicated that you are still contemplating hiring an attorney. I don't want you to be surprised if you come in here on October 24th and say, I just hired an attorney who can't be here today, I want a continuance, and I say no. So if you're going to hire an attorney, you should have it done well in advance of the October 24th [hearing], I would say before October 1st."

The defendant indicated that he understood the trial court's directive. A hearing for "status/appearance of counsel" was then set for September 30, 2022.

¶ 9    At the next hearing on September 30, 2022, the defendant indicated to the trial court that he was no longer trying to hire an attorney and that he would continue to proceed *pro se*. The State thereafter stated that, due to scheduling issues with its witnesses, it needed to move up the jury trial date to October 17, 2022, and requested same. The trial court granted the State's request.

¶ 10    The jury trial began on October 17, 2022, with the defendant proceeding *pro se*. On October 19, 2022, the jury ultimately found the defendant guilty of unlawful possession with intent

3

to deliver 3 to 15 grams of a controlled substance. The trial court allowed the defendant to remain out of custody pending the sentencing hearing.

¶ 11    A few days after the jury found the defendant guilty in this case, on October 28, 2022, the defendant came before the court for a new charge of obstructing justice in case No. 22-CF-1423. As a result of the new charge, the State had filed a motion to revoke the defendant's bond in this case which was set for this same day. After advising the defendant of his right to counsel in 22-CF-1423, at the defendant's request, the trial court appointed counsel to represent him in that case. The following colloquy between the court and the defendant then occurred:

"THE COURT: Mr. Jones, in the older case, the one where the sentencing hearing is pending, do you continue to wish to represent yourself?

THE DEFENDANT: As of right now, yes.

THE COURT: Okay.

THE DEFENDANT: Well, I was gonna get an attorney—

THE COURT: All right.

THE DEFENDANT: But now that I'm in custody, it's kind of making it impossible for me to do.

THE COURT: All right. Well. I'm just—I just want to know for today's purposes because I have appointed the public defender to represent you in the other case, the new case. Here's what happened. The State today filed a motion to revoke bond. Have you seen it, Mr. Jones?

THE DEFENDANT: No, I have not."

¶ 12    The trial court then adjourned the proceedings to allow the defendant time to review the motion to revoke bond. After the adjournment, the trial court first addressed 22-CF-1423. After

4

the State presented its proffer in that case, the court proceeded on the State's motion to revoke bond in this case. After the State's argument, the following discussion between the court and the defendant took place:

"THE COURT: *** [I]n the case where you represent yourself, the State's made this motion to revoke your bond so you have no bond available to you between now and when that sentencing date would happen. What would you like to say regarding that?

THE DEFENDANT: Yes. For one thing I—I'm in the process of hiring an attorney that will be able to get my transcripts and things and said motions and stuff where I would get a fair sentencing. And I would not be able to do that from inside of the county jail.

THE COURT: Okay.

THE DEFENDANT: I would never be able to get any of those things. I haven't had any of my transcripts. Still some additional evidence that's relating to that case and filing some post-trial motions on my behalf, too.

THE COURT: Okay.

THE DEFENDANT: And there's no way possible I would be able to do that from in here to get a fair sentencing hearing.

THE COURT: Okay. In 21-CF-1278, the motion to revoke bond. See, Mr. Jones, you have to understand when the jury returned the guilty verdict, that is a non-probationable extended Class 1 felony. It has a minimum of four years' imprisonment in the Department of Corrections. That's a minimum penalty. The maximum is 30 years. And the State did not make a motion at the time that your bond be revoked. You were allowed to remain out on bond, so you got the time between then, which was—has not been too long—

5

THE DEFENDANT: There has actually been—

THE COURT: Hold on, I'm just explaining. The verdict was October 19, so we're talking literally last week. Last week, you get this verdict, the State doesn't make the motion, and now this probable cause [in 22-CF-1423] that I'm being given says a very serious problem with a serious offense where the State's filed this as an obstruction case, but actually there's a lot more going on that would indicate a danger to the community. You're out between verdict and sentencing on a non-probationable Class 1 felony. That opportunity to remain out ended. It's over. The motion's granted. Your bond's revoked in 21-CF-1278. You're gonna be held without bond pending that sentencing hearing."

¶ 13 The court returned to the new obstruction of justice case, 22-CF-1423. It ultimately set bond in that case at $30,000. The defendant then addressed the court, and the following discussion took place:

"THE DEFENDANT: Yeah, I'm just wondering in the 1278, how would I be able to get the information I need to be able to fight my case at my sentencing hearing when I go to sentencing?

THE COURT: I understand what you're saying, Mr. Jones, but everything you've said places you in no different a position than anybody who's incarcerated pretrial. But you're not pretrial in that case. You're post verdict. You've already been found guilty. And that's no different than many, many other people. It creates logistical problems, I grant you, but that's the way it is, especially when I've got this probable cause that says you can't be trusted to not be a danger during this brief time from that verdict to the sentencing hearing. You had an opportunity; you lost it."

6

¶ 14    The court then noted the defendant's sentencing date in this case was set for December 15, 2022, and told the defendant that the probation department would contact him in order to prepare a presentence report. The defendant again addressed the court with the following discussion occurring:

"THE DEFENDANT: Yeah, I just wondered, like, how would I be able to get, like, my posttrial motions and stuff like that?

THE COURT: They can talk to you at the jail. They have books and other materials that are available to you as they're available to other people who are incarcerated there. And they have paper and writing materials. They have a way to do that. They can explain more about that to you at the correctional center.

THE DEFENDANT: Like getting—getting my transcripts and things.

THE COURT: All right. They can talk to you at the correctional center about how to arrange that.

THE DEFENDANT: All right."

¶ 15    On November 28, 2022, the defendant filed his motion for a new trial. On December 15, 2022, the defendant appeared, *pro se*. The court heard posttrial motions and conducted the sentencing hearing. The court denied the defendant's motion for a new trial.

¶ 16    At the sentencing hearing, the State introduced certified copies of the record of the defendant's conviction in federal case No. 02-CR-20029, which established that he was in federal custody long enough to qualify him for an extended term sentence in this case. In aggravation, the State presented testimony from Officers Blake Wehling and Danielle Griffet of the Champaign Police Department who both testified regarding a March 22, 2021, domestic battery investigation

7

involving the defendant as the alleged perpetrator. Nothing was presented regarding the new charges in case No. 22-CF-1423

¶ 17 The State argued that the defendant had a lengthy criminal history involving illegal drugs which began with a 1993 conviction for possession of narcotics and spanned to 2002 when the defendant was convicted in federal court of possession of crack cocaine base for which he was incarcerated for nearly 18 years. It also specifically referenced the aforesaid March 22, 2021, domestic battery incident as well as the defendant's 1996 and 2001 convictions for criminal sexual abuse. The State further argued that the defendant had a criminal history that spanned over 30 years and included some 13 non-traffic criminal convictions. The State requested that the court sentence the defendant to imprisonment in excess of 18 years.

¶ 18 The defendant presented no evidence. However, he argued, *inter alia*, "there was never any probable cause to even prove this offense or these things that happened besides word of mouth." He stated, "I have no, no problem with accepting my responsibility, but all I wanted from the start was a—fair trial ***." Regarding his sentencing recommendation, the defendant stated, "I think I should deserve a chance to, to be able to prove myself, you know, 'cause I am able to, to work and be a—be a[n] honest citizen." He ended his argument by stating, "There's definitely no proof of me selling drugs beside the State saying it, but it was—it was never proved beyond a reasonable doubt, you know."

¶ 19 The court then addressed the defendant and the State. The court stated that it had "considered the presentence investigation report, the evidence presented, the defendant's statement in allocution, as well as the arguments of counsel and Mr. Jones, as well as all statutory and non-statutory factors in aggravation and mitigation whether specifically

8

mentioned or not. Also, the court is considering the history, character of the defendant having due regard for the seriousness of this offense."

¶ 20    The court then found that the defendant was "eligible for an extended term sentence *** for a conviction of a felony within 10 years excluding time spent in prison on a prior felony of a same, or greater seriousness." In aggravation, the court found "the defendant's conduct threatened serious harm" and "[t]he defendant does have a history of prior delinquency or criminal activity starting back in 1989" that included battery, trespass, a series of traffic offenses, possession of cocaine, obstructing justice, criminal sexual abuse, and possession of controlled substances. The court further stated that it "must consider the potential deterrent effect of any sentence it imposes."

¶ 21    The court found no statutory factors in mitigation. It noted that although the defendant stated that he accepted responsibility, he continued to argue that there was no probable cause for his charged offense. The court found that at the defendant's age of 52 years, "it's hard to believe that there's significant opportunities for rehabilitative potential." It further found that although the defendant had children, those children were all adults and living independently so there was no "concern about a period of incarceration damaging their well-being."

¶ 22    Thereafter, the court, "based upon all of the factors and the evidence presented, as well as the evidence at trial," sentenced the defendant to 25 years' incarceration in the Illinois Department of Corrections followed by one year of mandatory supervised release. The court then advised the defendant of his appeal rights. The defendant indicated that he understood those rights. At the defendant's request, the court directed the clerk to file a notice of appeal on his behalf and appointed the state appellate defender to represent him on appeal. The defendant now appeals.

¶ 23                                II. ANALYSIS

¶ 24    The defendant concedes that the trial court correctly admonished him and ensured that he was knowingly and willingly giving up his right to counsel on March 28, 2022. He does not argue that the court failed to comply with Rule 401 at this hearing. Rather, he argues that circumstances changed significantly when he was charged with a new offense and his bond in the current case was revoked at the October 28, 2022, hearing. He avers that the court should have readmonished him of his right to counsel pursuant to Rule 401 at that time. The defendant acknowledges that he did not preserve this issue in a posttrial motion but asks this court to review the issue for second-prong plain error.

¶ 25    "The plain-error doctrine allows for the review of a forfeited issue if error in fact occurred and: (1) the evidence was closely balanced or (2) the error was so substantial that it deprived defendant of a fair trial." *People v. Pike*, 2016 IL App (1st) 122626, ¶ 108. "Whether there is plain error is a question of law that this court reviews *de novo*." *People v. Marcum*, 2024 IL 128687, ¶ 28.

¶ 26    The defendant has asked for second-prong plain error review. However, our supreme court has recently stated, "we would not have held repeatedly that substantial compliance with Rule 401(a) is sufficient if strict compliance were necessary to protect the right to counsel." *People v. Ratliff*, 2024 IL 129356, ¶ 46. It continued, "Because a Rule 401(a) violation is not akin to structural error, such a violation, if not raised in a postplea or posttrial motion, is not cognizable as second-prong plain error but only as first-prong plain error." *Id.*

¶ 27    Here, the defendant has not argued that first-prong plain error occurred. As such, he is unable to meet at least one of the prongs, *i.e.*, that the evidence was closely balanced, and has thus

10

forfeited the argument. See *People v. Presley*, 2023 IL App (5th) 230970, ¶ 30 (failure to address a prong of plain error forfeits it).

¶ 28    Because we find that the defendant's argument that the trial court should have readmonished him is forfeited as he failed to argue for first-prong plain error review, we do not need to proceed further. We thus affirm the defendant's sentence of 25 years' imprisonment.

¶ 29                                   III. CONCLUSION

¶ 30    For the foregoing reasons, we affirm the defendant's sentence of 25 years' imprisonment for unlawful possession with intent to deliver a controlled substance.


¶ 31    Affirmed.